UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOSHUA D WILKINSON,<br>JENNIFER CENTO,<br>ALMA MADER BREWING,<br>MICHAEL CENTO,<br><br>Plaintiffs,<br><br>v.<br><br>THEODORE E. ROKITA The Hon.,<br>JESSICA ALLEN,<br><br>Defendants. | ) | No. 1:26-cv-00248-JPH-MKK |

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Plaintiffs allege that Indiana's alcohol statutes prohibiting brewers from shipping beer to consumers by common carrier are unconstitutional. Defendants have filed a motion to dismiss. Dkt. [19]. For the reasons explained below, that motion is **GRANTED**.

Before turning to the merits, the Court addresses problematic aspects of Plaintiffs' filings.

First, the Second Amended Complaint is difficult to follow because its paragraphs are not numbered consecutively. Instead, every subsection begins with paragraph one so that "Jurisdiction" has paragraphs 1–2, and "Plaintiffs" has paragraphs 1–7 and so on. From there, the Second Amended Complaint references non-existent paragraphs, *e.g.*, Plaintiffs assert that they "cannot complete the transactions described in paragraphs 20–28 above . . .", but the

Second Amended Complaint does not have paragraphs 20–28. Dkt. 28 at 7 ¶ 11. So, it's not clear what allegations Plaintiffs are referring to.

Next, the Second Amended Complaint cites article V § 3(a)(2) of the Maryland Constitution as a source for the Indiana Attorney General's authority. Dkt. 28 at 4 ¶ 2. Article V § 3(a)(2) of the Indiana Constitution addresses the election of the Governor and Lt. Governor. Ind. Const. art. V § 3(a)(2). While Plaintiffs provide an after-the-fact explanation in their surreply, dkt. 33 at 6, that doesn't explain why they didn't cite controlling Indiana law in the first instance or why the reference to the Maryland Constitution appeared in the original complaint, dkt. 1, the amended complaint, dkt. 9, and in the second amended complaint, dkt. 28.

More consequentially, Plaintiffs' descriptions of the challenged Indiana statutes are completely inaccurate. Plaintiffs state:

- "Indiana law allows for direct shipping and delivery of beer to consumers only from in-state breweries", dkt. 28 at 3 ¶ 4.
- "a resident beer producer may sell, ship, and deliver directly to Indiana consumers any product it manufactures under its license" and "[t]here is no corresponding license available in Indiana that could be issued to out-of-state breweries located in Missouri to allow for sales, shipments, and direct delivery of beer to Indiana consumers, and Indiana laws, regulations, and rules do not allow out-of-state breweries to do so." *Id.* at 5 ¶ 2.

- "Indiana issues brewery permits that authorize direct sales and shipping to customers only to state residents", citing Indiana Code § 7.1-3-2-1. *Id.* at 5 ¶ 3.
- Finally, in their prayer for relief, Plaintiffs request that the Court "declar[e] the residency requirement" in Ind. Code § 7.1-3-2-7(5)(H) unconstitutional. Dkt. 28 at 8 ¶ B.

These descriptions are fundamentally incorrect as the challenged Indiana statutes don't have the residency requirement described by Plaintiffs. Instead, under applicable Indiana statutes:

- All brewers, regardless of whether located in or outside of Indiana, are prohibited from shipping beer to directly to consumers via common carrier. Ind. Code § 7.1-5-11-1.5(a).
- There is no residency requirement that allows in-state brewers to deliver beer directly to Indiana consumers via common carrier while prohibiting out-of-state brewers from doing so. Ind. Code at § 7.1-3-2-7(5)(H). Instead, § 7.1-3-2-7 states, in relevant part, "an out-of-state brewer holding . . . an out-of-state brewer's permit may . . .: (5)(H) Sell and deliver beer to a consumer . . . at the residence of the consumer."

Federal Rule of Civil Procedure 11(b), requires counsel to certify that to the best of their knowledge, information, and belief, "the factual contentions have evidentiary support" and the "legal contentions are warranted by existing law or a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." *Jones v. Kankakee Cnty. Sheriff's Dept.*, 164

F.4th 967, 970 (7th Cir. 2026) (applying Rule 11); *see Dec*, 171 F.4th at 947–48. Misrepresenting the law may support the imposition of sanctions. *See Monee Nursery & Landscaping Co. v. Int'l Union of Operating Eng'rs, Loc. 150, AFL-CIO*, 348 F.3d 671, n.4 (7th Cir. 2003) (finding misstatements of the law can lead to sanctions under Rule 11); *Brown v. Lincoln Towing Serv.*, No. 88C0831, 1988 WL 93950 (N.D. Ill. 1988) (imposing sanctions based on citations to an expired federal statute); s*ee also e.g., Mid. Cent. Operating Eng'rs Health & Welfare Fund v. HoosierVac LLC,* No. 2:24-cv-00236-JPH-MJD, 2025 WL 1511211, at *2 (S.D. Ind. May 28, 2025) ($6,000 sanction); *Virgil v. Experian Info. Sols. Inc.*, No. 1:25-cv-01641-MPB-MJD, 2026 WL 401066, at *4 (S.D. Ind. Mar. 10, 2026) ($10,000 sanction).

Given Plaintiffs' inaccurate and misleading descriptions of the challenged Indiana statutes, **the Court orders Plaintiffs' counsel to show cause by November 30, 2026, why the Court should not impose sanctions on counsel for violating Fed. R. Civ. P. 11(b)**. Plaintiffs' brief responding to the order to show cause shall not exceed 10 pages.

## I.
## Facts and Background

Because Defendants have moved for dismissal under Rule 12(b)(1) and 12(b)(6), the Court accepts and recites "the well-pleaded facts in the complaint as true." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011); *see*

*Ctr. for Dermatology and Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014).

Joshua D. Wilkinson, Michael Cento, and Jennifer Cento are "craft beer aficionados" who enjoy purchasing rare, fine, and artisanal craft beers. Dkt. 28 at 3. Alma Mader Brewing is a Kansas City brewer that maintains an online store and seeks to ship its craft beers directly to Indiana consumers by common carrier. *Id.* Consumer Plaintiffs wish to have beer from Alma Mader and similar out-of-state brewers shipped directly to their homes. *Id.*

Indiana Code § 7.1-5-11-1.5(a) makes it "unlawful for a person in the business of selling alcoholic beverages in Indiana or outside Indiana to ship or cause to be shipped an alcoholic beverage directly to a person in Indiana who does not hold a valid wholesaler permit." Certain beer brewers, however, may apply for a permit to "[s]ell and deliver beer to a consumer . . . at the residence of the consumer." Ind. Code § 7.1-3-2-7(5)(H). A brewer's eligibility to apply for such a permit is determined by the volume of beer the brewer manufactures for sale or distribution within Indiana. *Id.* These statutes do not distinguish between in-state and out-of-state brewers, so brewers both in Indiana and outside of Indiana can apply for a permit to sell and deliver beer directly to consumers. Brewers that are granted such a permit must use their own employees—not a common carrier—to deliver alcohol to consumers and complete the required age verification. Ind. Code § 7.1-3-1-30.

Plaintiffs bring this action under 42 U.S.C. § 1983, seeking a declaration that the challenged sections of Indiana's alcohol statutes violate the Commerce Clause. Dkt. 25 at 8; dkt. 28 at 2.

Defendants, Theodore E. Rokita, Indiana Attorney General, and Jessica Allen Chair of the Indiana Alcohol and Tobacco Commission, have filed a motion to dismiss.[1] Dkt. 20.

## II.
## Motion to Dismiss Standard

Defendants may move under Federal Rule of Civil Procedure 12(b)(1) to dismiss claims for lack of subject-matter jurisdiction and under Federal Rule of Civil Procedure 12(b)(6) to dismiss claims for "failure to state a claim upon which relief can be granted." When faced with a Rule 12(b)(1) motion, the plaintiff "bears the burden of establishing that the jurisdictional requirements have been met." *Burwell*, 770 F.3d at 588–89.

To survive a Rule 12(b)(6) motion, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim is one that allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint "must allege enough details about the subject-matter of the case to present a story that

[1] Plaintiffs' second motion for leave to file surreply is **DENIED** because it does not "address new arguments or evidence raised in the reply brief or objections to the admissibility of the evidence cited in the response." *Lawrenceburg Power, LLC v. Lawrenceburg Mun. Utilities*, 410 F. Supp. 3d 943, 949 (S.D. Ind. 2019); dkt. [33].

holds together," *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021), "but it need not supply the specifics required at the summary judgment stage." *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021).

Under both 12(b)(1) and 12(b)(6), the Court will "accept the well-pleaded facts in the complaint as true," but will not defer to "legal conclusions and conclusory allegations merely reciting the elements of the claim." *McCauley*, 671 F.3d at 616; *see Burwell*, 770 F.3d at 588–89.

## III.
## Analysis

### A. Rule 12(b)(1) Motion – Standing

Defendants' Rule 12(b)(1) motion argues that Plaintiffs don't have standing to bring this case. Dkt. 20 at 11. This argument goes to whether the Court has subject matter jurisdiction, so the Court addresses it first. *Bazile v. Finance Sys. of Green Bay, Inc.*, 983 F.3d 274, 277–78 (7th Cir. 2020).

The "irreducible constitutional minimum" of standing consists of three elements: the plaintiff "must have suffered (1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 578 U.S. 330, 338 (2016). Standing "must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). The plaintiff has the burden of establishing these elements and therefore must "clearly allege facts demonstrating each element." *Spokeo*, 578 at 338.

Here, Defendants argue that Plaintiffs lack standing because the Challenged Statutes are not discriminatory and the increased cost of delivering beer from out-of-state is not enough to establish a concrete injury. Dkt. 20 at 12. Consumer Plaintiffs respond that they are injured because they cannot have out-of-state beer shipped to them and therefore must settle for less desirable beers available locally. Dkt. 28 at 3–4. Alma Mader responds that it is injured because the in-person delivery requirement is prohibitively expensive and prevents it from participating in the Indiana market. Dkt. 25 at 5–6; *see also* dkt. 28 at 3–4. Those alleged injuries are not hypothetical, but concrete, particular, and redressable by an injunction, so they are sufficient to support standing here. *See Spokeo*, 578 U.S. at 339.

Defendant's arguments challenging standing also attack the merits of Plaintiffs' claims, but a motion to dismiss under Rule12(b)(1) is "not to decide the merits of the case." *Burwell*, 770 F.3d 586 at 588. The merits of Plaintiffs' claims, therefore, has no bearing on standing. *Burwell*, 770 F.3d at 588.

Defendants' motion to dismiss based on lack of subject matter jurisdiction is therefore **DENIED.**

**B. Rule 12(b)(6) Motion – Failure to State a Claim**

The Commerce Clause allows Congress "to regulate Commerce . . . among the several States." U.S. Const. Art. I, § 8, cl. 3. "[T]he Supreme Court has long held that a 'dormant' or 'negative' component of the Clause implicitly limits the states from erecting barriers to the free flow of interstate commerce even where Congress hasn't acted." *Park Pet Shop, Inc. v. City of Chicago*, 872

F.3d 495, 501 (7th Cir. 2017). Still, States have broad power over the importation and sale of alcohol under § 2 of the Twenty-first Amendment. *Chicago Wine Co. v. Braun*, 148 F.4th 530, 537 (7th Cir. 2025) (Scudder J., concurring), *cert. denied*, 224 L. Ed. 2d 831 (May 18, 2026).

All "laws that discriminate against interstate commerce, either expressly or in practical effect", are prohibited by the dormant Commerce Clause. *Park Pet Shop*, 872 F.3d at 501. Statutes that expressly discriminate are *per se* invalid. *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338 (2007). And as relevant here, facially neutral statutes may be unlawful if they are discriminatory in effect. *Park Pet Shop*, 872 F.3d at 501.

**1. Facial Discrimination**

As explained above, Plaintiffs' Second Amended Complaint describes the Challenged Statutes as facially discriminatory, that is, explicitly treating out-of-state brewers different from in-state brewers, dkt. 28 at 5. Plaintiffs appear to concede that their description was wrong and step back from that position, *see* dkt. 25 at 3 (Reply Brief which does not mention facial or explicit discrimination).

The Challenged Statutes treat in-state and out-of-state brewers alike: neither may deliver beer by common carrier, *Id.* at § 7.1-5-11-1.5(a), and both can apply for a permit to deliver their own beer, Ind. Code § 7.1.3.2.7(5)(H); *Id.* at § 7.1-3-1-30(a). So, the Challenged Statutes are not facially discriminatory.

### 2. Discrimination in Effect

The facial neutrality of the Challenged Statutes does not, however, necessarily mean that the Challenged Statutes do not violate the dormant Commerce Clause. Instead, facially neutral statutes may be unlawful if they are discriminatory in effect, that is, they "act[] as an embargo on interstate commerce without hindering intrastate sales." *Park Pet Shop*, 872 F.3d at 501.

Defendants argue that the Challenged Statutes are not discriminatory in effect and *Chicago Wine* forecloses any claim that they are. Dkt. 20 at 8; dkt. 30 at 5. Plaintiffs respond that the Challenged Statutes are discriminatory in effect and *Chicago Wine* is not controlling because it involved retailers while *Granholm v. Heald*, like this case, involved producers. Dkt. 25 at 3. Defendants argue that the Challenged Statutes are not discriminatory in effect because the burden hinges on distance rather than borders. Dkt. 20 at 9; dkt. 32 at 5–6. Plaintiffs respond that the Challenged Statutes effectively amount to a ban on shipping out-of-state beer because it is not economically feasible for distant brewers to deliver beer using their own employees and "this disparity shields Indiana breweries and wholesalers from competition." Dkt. 25 at 3–4.

To support their allegation that the Challenged Statutes create a "virtual ban on out-of-state shipping and deliveries of beer to Indiana consumers", *id.* at 6, Plaintiffs rely on *Family Winemakers of California v. Jankins*, *Id.* at 4. There, the First Circuit held that a Massachusetts law was discriminatory because it created a *de facto* embargo by setting a volume cap that, in practice, allowed all Massachusetts wineries to ship to consumers via common carrier

while nearly all out-of-state wineries could not. *Family Winemakers of California v. Jankins*, 592 F.3d 1, 8–9 (1st Cir. 2010). Plaintiffs do not discuss this gallonage cap or how it supports their theory. Nor do they allege that Indiana brewers' sales are not hindered by the Challenged Statutes. *Id.*; *Park Pet Shop*, 872 F.3d at 501 (Laws are discriminatory in effect when they "act[] as an embargo on interstate commerce *without hindering intrastate sales*.") (emphasis added). Thus, the Challenged Statutes do not create the *de facto* embargo described by Plaintiffs.

Burdens based on distance rather than borders "do[] not establish . . . a discriminatory effect." *Park Pet Shop*, 872 F.3d at 503; *see also Baude v. Heath*, 538 F.3d 608, 613, 615 (7th Cir. 2008) (Stating that a face-to-face age verification requirement "benefits small Indiana wineries near the state's population centers but lacking wholesale distributors, vis-à-vis small California wineries that lack wholesale distributors in Indiana, but [the law] does not disadvantage California (or other) wineries in general."). Indeed, it is much easier for brewers in Southeast Michigan and Northwest Ohio to deliver to consumers in Ft. Wayne, Indiana than it is for brewers in Evansville, Indiana to do the same. Thus, while it might not be cost-efficient for Alma Mader to deliver beer to consumers throughout all of Indiana, the Plaintiffs have not plausibly alleged that the Challenged Statutes creates a *de facto* embargo on interstate commerce. A recent Seventh Circuit case reinforces this conclusion.

In *Chicago Wine,* the statute at-issue prohibited "retailers of alcoholic beverages located outside of the State from shipping wine to Indiana

consumers." *Chicago Wine*, 148 F.4th at 531. While the statute prohibited all retailers from shipping wine via common carrier, it allowed any retailer with a physical presence in a specified geographic region as defined by statute to deliver wine directly to consumers within the same geographic region. *Id.* at 533. (Easterbrook, J., concurring). Deciding the case with a two-judge quorum and no majority opinion, the Seventh Circuit upheld this statutory framework finding that Indiana's common carrier ban did not unconstitutionally discriminate against out-of-state businesses. *Id.* at 532.

Plaintiffs argue that *Chicago Wine* doesn't apply here because that case involved alcoholic beverage retailers rather than producers like the brewers covered by the Challenged Statutes. Dkt. 25 at 2–3. Plaintiffs argue that *Granholm*, which involved producers, controls here. *Id.* But the dormant Commerce Clause applies in equal force to both retailers and producers. *See Tennessee Wine and Spirits v. Thomas*, 588 U.S. 504, 534 (2019) ("the [Commerce] Clause prohibits discrimination against all 'out of state economic *interests*.'") (emphasis original). Plaintiffs provide no explanation as to why the dormant Commerce Clause and the Twenty-first Amendment would apply any differently here.

The facts in *Granholm* are also dissimilar to the facts here as the statutes challenged in *Granholm* treated out-of-state wineries differently than in-state wineries. *Granholm v. Heald*, 544 U.S. 460, 470 (2005) (New York requiring physical presence to ship to consumers, and Michigan only permitting in-state wineries to ship to consumers). Here, in contrast, the Challenged Statutes do

not treat out-of-state brewers differently than Indiana brewers and all brewers, regardless of location, are eligible for equivalent licenses. *See* Ind. Code §§ 7.1-3-2-7(a), (5)(H). The Challenged Statutes here therefore do not discriminate like those in *Granholm* and are nondiscriminatory under *Chicago Wine*.

Last, Plaintiffs suggest that *Chicago Wine*'s precedential value is lessened because the losing side sought certiorari to the Supreme Court. Dkt. 25 at 3 ("It should also be noted that [*Chicago Wine*] is currently on appeal to the United States Supreme Court, with a Petition for Certiorari pending."). But Plaintiffs do not develop an argument based on this fact, and none is obvious to the Court, given that the Supreme Court grants certiorari in only around 1 percent of cases.[2] Regardless, the Supreme Court has since denied that petition for certiorari. *Chicago Wine Co. v. Braun*, 146 S.Ct. 2662 (2026).

In sum, the Court concludes that the Challenged Statutes are not discriminatory in effect and therefore do not violate the principles underlying the dormant Commerce Clause.

#### 3. ***Pike* Balancing**

Finally, Plaintiffs argue that if the Court finds the Challenged Statutes are nondiscriminatory, as it has here done, then the Court must apply the balancing test articulated in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, at 142 (1970). Under "*Pike* balancing" a statute violates the dormant Commerce Clause only if the "burden imposed on [interstate] commerce is clearly

---

[2] *Frequently Asked Questions: General Information*, Supreme Court of the U.S., https://www.supremecourt.gov/about/faq_general.aspx.

excessive in relation to the putative local benefits." *Chicago Wine*, 148 F.3d at 545 (Scudder, J., concurring).[3] Although "it is unclear whether *Pike* balancing has any continued applicability" when the Twenty-first Amendment is invoked, *id.* at 545–46, the Court considers it here.

Defendants argue that the Challenged Statutes here survive *Pike* balancing. Dkt. 20 at 9. Plaintiffs respond that the burden imposed on delivering beer from out-of-state and on consumer access to distant craft beers is clearly excessive to any local benefits, but they cite no support for their argument. Dkt. 25 at 5. Plaintiffs also "note[] that Indiana already allows wineries to use a common carrier to make out-of-state deliveries of their wine to Indiana consumers", but they again do not explain why that is relevant to the case at hand. *Id.* Regardless, Plaintiffs' arguments face strong headwinds as under the applicable rational-basis standard of review, no case has "appl[ied] *Pike* balancing and h[eld] that a non-discriminatory state alcohol law flunk[ed]." *Lebamoff Enters., Inc*, 666 F.3d at 467 (Hamilton, J., concurring); *see also Park Pet Shop*, 872 F.3d at 498).

So, in *Chicago Wine*, after considering Indiana's interest in preventing underage drinking and regulating ID verification, Judge Scudder concluded that "any burden the common carrier ban imposes on interstate commerce is

[3] In Judge Easterbrook's view, *Pike* does not apply to nondiscriminatory statutes because "nondiscriminatory state laws may be enforced under § 2 of the Twenty-first Amendment without further ado." *Chicago Wine*, 148 F.4th at 532 (Easterbrook, J., concurring). Indeed, so long as a law is nondiscriminatory, "§ 2 [of the Twenty-first Amendment] grants States latitude with respect to the regulation of alcohol." *Tennessee Wine*, 588 U.S. at 533. Applying the *Pike* test to those statutes would negate the deference § 2 was intended to provide States. *See generally id.* at 528–29.

not excessive in relation to its benefits." *Chicago Wine*, 148 F.4th. at 546 (Scudder, J., concurring). And in *Baude*, the Seventh Circuit opined that while the benefit of Indiana's face-to-face age verification requirement prior to shipping wine might have been only marginal, that was not enough to tip the scales in the plaintiff's favor under *Pike* balancing. *Baude*, 538 F.3d at 615. States cannot require common carriers to verify the recipients' age when delivering alcohol, and "[a]llowing [common] carriers to deliver [alcohol] could therefore undermine [Indiana's] efforts to prevent underage drinking", *Lebamoff Enters., Inc.*, 666 F.3d at 459; *see also Baude*, 538 F.3d at 613; *Chicago Wine*, 148 F.4th at 547 (Scudder, J., concurring).

Plaintiffs have not plausibly pleaded a dormant Commerce Clause violation because they make only bare allegations that the burdens on commerce outweigh these benefits. *See* Dkt. 25 at 5; *Baude*, 538 F.3d at 615.

For these reasons, Defendant's motion to dismiss is **GRANTED**.

## IV.
## Conclusion

Plaintiffs' second motion for leave to file surreply is **DENIED.** Dkt. [33].

Defendant's motion to dismiss is **GRANTED**. Dkt. [19]. This case is **DISMISSED without prejudice.** Plaintiffs' will have till **December 15, 2026**, to amend their complaint or final judgment will issue with no further warning.

Plaintiffs' counsel are **ordered to show cause by November 30, 2026, why sanctions should not be imposed for violating Fed. R. Civ. P. 11(b)**.

**SO ORDERED.**

Date: 11/16/2026

James Patrick Hanlon

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel.